Jasen, J.
(dissenting). Section 104 (subd. 1) of the Election Law provides that where two or more candidates are nominated by “ one party or independent body, for an office to which two or more persons are to be elected ”, any such candidate may demand that the order in which the names of the candidates appear on the ballot be determined by lot.
I do not read section 104 (subd. 1) to mean that the right to a drawing is limited to those candidates who are nominated by only one party, as such an interpretation, on its face, discriminates against all other candidates nominated by more than one party seeking election to the same office.
A fair reading of ‘ ‘ one ’ ’ party would mean that a candidate can only request a drawing among those nominated by the saíne party. That is to say, a candidate nominated by the Republican Party woud not have the right to force a drawing for position on the ballot of any other party except the Republican Party. In other words, a candidate’s request for a draw would not disturb the relative positions on the ballot of the nominees of the other parties, but merely affect the nominees of the same party as the candidate making the request to draw. It is clear from the language of the statute that the Legislature intended to give equal rights to all nominees of the same party. Yet the result reached by the majority of this court sanctions the drawing held here which was restricted to only two of the three candidates nominated by the Democratic Party.[1] This result abrogates the statutory rights granted petitioner by subdivision 1 of section 104, and violates petitioner’s rights to equal protection of the law extended by the Federal and State Constitutions.
In my view, section 104 (subd. 1) of the Election Law specifically mandates that any candidate for an office to which two or more persons are to be elected, may demand that the orders in which the names of the candidates nominated by one party or *250 independent body are arranged on the ballot, be determined by lot. Once a demand for a drawing is filed, the section requires that “ [t]he secretary of state shall perform the duties required by this subdivision in all cases affecting nominations filed in his office.” (Emphasis supplied.')
It would seem that the Legislature, in stating that the candidate may “ demand ” a drawing, and that “ [t]he secretary of state shall [thereafter] perform the duties required by this subdivision in all cases ” (emphasis supplied), leaves no room for argument as to the legislative intent. Clearly and explicitly, the Legislature recognized the importance of the order in which the names of the candidates appear on the ballot, and granted to every aspirant for an office to which two or more persons are to be elected, the right to have determined by lot the position of his name on the ballot. This statutory right, in my opinion, is a substantial one and should be protected by the court whenever it is prejudiced or impaired.
At the time the petitioner demanded a draw, it was the duty of the Secretary of State to comply with the clear mandate of the statute (§ 104, subd. .1), and conduct such drawing for ballot position on the Democratic Party line. Once the positions of the three Democratic Party candidates were determined, it was then the duty of the Secretary to arrange the voting machine ballot in such a manner as to allow the voting machine to function properly. Of course, it would be necessary in this regard to consider the capabilities of the voting machine. (Election Law, § 265.)
Even though section 248 of the Election Law provides that the ballot be arranged so that each office occupies as many columns or rows on the machine as the number of candidates to be elected to that office, it does not extinguish a candidate’s personal right of election to determine whether to demand a draw for position on the ballot. Section 248 merely deals with the mechanical arrangement of the ballot in accordance with the capabilities of the voting machine, and section 265 of the Election Law provides that section 248 applies to voting machines only “ as far as practicable ”.
The Secretary of State concedes that the machines could bo adjusted to function properly if the names appeared in adjoining columns. For example, if petitioner Cooke were to draw posi *251 tian 2 on the Democratic Party line, he would then be placed No. 3 on the Conservative Party line. However, the Secretary claims that such a mechanical arrangement could cause a malfunction during the voting process and, therefore, should be avoided. In support of this claim, an affidavit from a sales representative of one of the voting machine manufacturers advises “ against such a mechanical arrangement for the reason that it could cause a malfunction during the voting process The record lacks, however, any evidence that such an arrangement had, in'the past, actually caused a voting machine to malfunction.
As a matter of fact, it has been called to the court’s attention that such an arrangement had actually been used on at least one occasion[2] previously, without any reported incident of malfunction.
While it is true that the voting machines in our State are not capable of being arranged with adoquate safeguards to prevent a voter from casting more than one vote for a candidate if his name appears in two separate vertical columns with a third column of candidates intervening (a position the petitioner could be placed in if he were to draw the first position on the Democratic Party line), malfunctioning of the machines can bo prevented by using one additional vertical column — i.e., four columns instead of threo. For example:
Republican Gabrielli Jones Wachtler
Democratic Cooke Meyer Dembitz
Conservative Gabrielli Cooke Jones
Liberal Martuscello Meyer Wachtler
Again, it must be said that the general administrative voting machine instructions set forth in section 248, providing for the ballot to contain as many columns or rows on the machine as the number of candidates to be elected, apply only so far as practicable (Election Law, § 265), and must fleíd to the statutory personal right of the candidate to draw for position on the ballot by lot, subject only to the capabilities of the voting machine. On this point, the record is completely void of any proof that such an arrangement was not feasible. Indeed, the *252 Secretary, in a supplemental brief submitted to the court after oral argument, concedes that the instructions of section 248 to the effect that the number of columns should be the same as the number of candidates to be elected to that office, apply only so far as practicable. To illustrate this concession, the Secretary points oift that the 1957 ballpt for Justice of thi Supreme Court in the Eighth Judicial District[3] properly contained six columns for four positions to be filled because the voting machines could not have been arranged for four columns without probable malfunction ”. It is ironic that the majority has based its decision upon the grounds that section 248 would be violated if four columns were used on the voting machine to obviate the possibility of machine malfunction if a drawing resulted in certain combinations of candidates on the ballot — yet the Secretary has conceded that section 248 permits this result.
It should be emphasized that I do not advocate the ‘ ‘ moving [of] whole columns on the ballot and thus prejudice the personal rights of candidates of other parties ” as the majority suggests and as sanctioned by Special Term, the dissenter below and my brother Judge Bubke — but, on the contrary, propose that only the order in which the candidates appear on the Democratic Party.line be subject to movement, in accordance with the draw mandated by section 104 (subd. 1). Hence, the rights of the other party candidates would be fully protected with their names appearing on the ballot in the same order as proposed by the Secretary of State.
It should also Se noted that petitioner did not waive his right to a draw on the Democratic Party line by reason of his failure to request a draw on the Conservative Party line, since the petitioner could not exercise his right to request a draw on the Democratic Party line until after the Democratic Party primary election was held, and the results known.
For the reasons stated, I would reverse the order of the Appellate Division and direct a drawing between the nominees of the Democratic Party.
*253 Chief Judge Fttld and Judges Scileppi, Bebgan, Bbeitel and Gibson concur in Per Curiam opinion; Judges Btjbke and Jasen dissent and vote to reverse in separate opinions.
Order affirmed, without costs.

. The Secretary of State held a drawing for position on the Democratic Party line between candidates Meter and Dembitz, but refused to allow petitioner to participate in the drawing.

. See official ballot for Justice of the Supreme Court, Eighth Judicial District, November, 1962 (five candidates to be elected).

. See official ballot, Justices of the Supreme Court, Eighth Judicial District, November, 1957 (four candidates to be elected — six columns).